Mr. Helfand. Thank you, your honor. May it please the court. My name is Robert Helfand. I represent the police of Valarezo-Tirado. I'd like to use this moment to give a little rebuttal. Granted. Your honor, my client asked you to review both the merits of his claim under the convention.    Can I ask you a quick question at the outset? Oh, sure. Is Mr. Valarezo-Tirado still in the country? Yes, he is. Okay. Thank you. And he's asking you to review both the merits of his claim under the convention against torture and the process that claim received in the immigration court. Let me just, and I don't mean to short circuit anything here, but I feel that I probably should express to you what's my greatest concern. And that is what can be derived, if anything, from just five words. Government is willing to assist. Why shouldn't we as a review in court, a court which must determine what those words mean, and I will concede I am having difficulty doing just that, simply send it back and ask the BIA to review both the merits of his claim. Well, I don't think that's a sufficient reason to send it back. I think it's a sufficient reason to ask the BIA or ask the IJ to be more explicit about what was intended here. Isn't that on its face a sufficient reason to send this back? That is our position, your honor. Yes. We think that's a sufficient reason to send it back. And we've cited authority on that point. But I'd also like to suggest that a reasonable interpretation of the judge's, the IJ's five words is that there was somehow substantial evidence on the issue of acquiescence that, and in that case, the ruling is defective on the merits as well. Mr. Balareso testified explicitly about the issue of acquiescence, although he wasn't allowed to get much out. I would point out that as this court pointed out in the Lutsika case, in the Guerrero case, both of which are in our briefs, that actual knowledge of the act constituting torture is not required to establish acquiescence. Willful blindness suffices. But if that is indeed the case, if that is indeed factual, wouldn't that necessarily have to be reached by an explanation of government is willing to assist that there would have to be some further indication of just what it is the government knows, what it is the government is willing to do, and whether or not that's assistance. Well, I agree with everything you said, Your Honor. This really isn't as framed a due process question, is it? This is in our court's precedent, including the I think the one case, a case that you have referred to in the briefing, is this court's interest in having a record that we can adequately review. I believe Judge Becker wrote that opinion, and that would seem to me to be what we have here. I don't disagree, except to the extent I do. I think it is a due process issue under Abdullahi and Toure. Why do we need to reach a constitutional issue? I mean, just based upon the doctrine of constitutional avoidance and given the existence of our own precedent, where we have a decision that is not clear to us, why do we need to address the matter as a constitutional one? Well, if the case is returned to the IJ, I believe that my client would have a right to counsel and would have also the right to have his testimony developed, and those are important issues that the IJ skipped over in the initial hearing. Well, but here he was informed of his right to counsel several times. I think he was even told that a list of pro bono counsel could be provided to him, and he just wanted to proceed without counsel. So to the extent your due process argument envelops the right to counsel, I'm just not sure how that's consistent with the record. My concern is just exactly what the Chief said. What we've got here, it's not any analysis of this claim at all. It's almost an insult. Government is willing to assist. I don't know what that's based upon. It may be because Villa apparently was incarcerated, had been locked up, either when your client visited the police station, I think a second time, or at some point, it's clear from the record, Villa had been taken into custody. We don't know why. But the fact that your client did not pursue the point with the police and the extent that the IJ was concerned about that, I mean, that's ridiculous. If the police were supporting Villa and were going to make sure that nobody made Villa's life uncomfortable, you wouldn't expect anyone to be stupid enough to keep running to the police to complain about Villa. That would be an invitation to getting beaten up or worse. So that's not a very helpful point that was made. So I agree. I don't know what government is willing to assist means. Yeah, well, I'm in a kind of funny position here, Your Honor, because I agree with everything you're saying. And so maybe less will be more. In my case, I would disagree only with respect to the question of whether he was adequately advised of his right to counsel. It's true that he receives a slip of paper telling him that he had a right to counsel at the end of the asylum interview. Was that the end? He received it? Yes, it was after the conclusion of the interview. He receives the form that notifies him of the right to counsel. And eight days later, he's in front of the IJ and the IJ didn't ask him. The interview. So I understand. I'm not sure I understand what you're saying, Mr. Hoffman. He received the form after the interview with the with the asylum officer. Yes, the form that was advising him of his right to counsel when it expressly states that he has a right to counsel in his hearing before the immigration. Oh, OK. Form I-863. Right. And eight days later, he was in front of the immigration judge who didn't ask him whether he had counsel or whether he wanted time to get one. She simply advised him or announced to him that he he had no right to additional time to get counsel. Yeah, well, it was obvious to her that he didn't have counsel, which she proceeded in spite of that fact. Right. Well, it was obvious that he didn't have counsel present in the courtroom. Right. But a number of the cases we cite involve cases where aliens had camp were represented by lawyers who didn't appear at the hearing. And sometimes it's simply a mistake. None of that happened here. What happened here is he was told, you don't have a counsel and that's that. And I would I would point out, Your Honor, I'd repeat what Chief Justice Judge Smith wrote in the Ignatov case that it's it's not sufficient where an alien has a right to counsel simply to notify him of that. Right. He's also going to have adequate time to find counsel. Let me ask you if this case went back, goes back. Can you give us a few examples of the evidence and testimony that the IJ must develop on remand? Well, specifically on the question of I mean, most of the facts are undisputed. And since she seemed to have ruled on the question of acquiescence, that's that's what we get into. And I had had one argument we would make is that the facts already in the record make out a prima facie case for acquiescence. And again, I'll refer to the Guerrero case and the cases that it cites that shows there are many cases in which the the torture victim approached the police and was told either we can't do anything or the police accepted a complaint and didn't act on it. In this case, the facts are much stronger because the police actually intervened in the complaint process right at its inception and actively discouraged Mr. from filing a complaint on the ground that he would be harmed by Mr. Villa if he did so. The fact that Mr. Villa later became aware of the fact that he tried to file a complaint is further evidence of police complicity. So there's already a a prima facie case under the cat for the cat claim. In the meantime, Mr. Valerio's counsel is now looking for or in the process of developing additional evidence from Ecuador to establish who this Edwardo Villa is and what his relationship is to the local police. Thank you. Well, I have no further questions. I don't have any either. Well, before I before I end, I'd like to I'd like to address Judge McKee's metaphysical question in a sense. I hope I hope you will do more than address it. I hope that you will answer it categorically. Okay, now you put me on the spot. But what I would want to say is that what's not in doubt at any stage of this proceeding, what has never been in doubt is the question of why Mr. Valerio is in this country today and why he's remained, even though it meant spending almost all of 2020 in prison. And he's here because he fears for his own life and the lives of his children and whether his case checks all the boxes for a cat claim is a technical legal question. I sincerely think it does. But whether he gets a real chance to prove his case is a matter that's much more profound. Judge McKee suggested that the or rather Chief Judge Smith, I'm sorry, suggested that the the the report in the in the the IJ's order was kind of an insult. I would say that that's true of the entire transcript. I ask you, please look at that transcript again, your honors. Please consider what it would mean if we rule that this is the best our country can do for people who ask for our help. We we we will. And this court has painstakingly in years past paid attention very closely to some of those transcripts. And without getting into much detail, it led to some some positive actions being taken. So thank you very much for your argument, Mr. Hoffman. We'll have you back on rebuttal. Thank you, Ron. You did reserve time on rebuttal, did you not? Four minutes. Yes. Thank you, Mr. Jolly. Please, the court. My name's Lance Jolly. I represent the respondent, the United States attorney general. As the honor pointed out, the weak part of the case is those five words and the lack of a lot of analysis. All is that is required, however, is that the immigration judge review the record and grasp the movements claims. And as opposing counsel has pointed out, it appears that the government willing to assist is part of that points to acquiescence. And in this case, substantial evidence supports the finding that there is a reasonable fear of persecution, real fear of torture by with the acquiescence of a public official. Do you know that the IJ relied on to conclude the Ecuador government is willing to insist. Or the police. Sorry for no problem. No problem at all. The IJ reviewed the record before the interview with the asylum officer with the petitioner. And the petitioner did not report the threats of the villa to the police. If what the petitioner is saying is true, why in the world would he go to the police to report them, knowing that that would be, as I said in my discussions to have on that would really be asking for trouble. Well, he did, he did go to the police to to report the bill is initially a police told them basically look this guy's involved in some quote dark business. I read I interpret that as proceed at your own risk. So why would he go back to the same department we've been told this guy's involved in some dark business we know that by the way. Later on, he finds out that apparently villain knows that he went to the police department. That's just not in these kinds of regimes. People in the right mind. Don't think that way they don't think let me go running to read out this guy who could have me killed her for read him out, it doesn't work that way. I assume for not going to the police it's a factor that can be considered, but it would seem to me that if you were consistently going to the police to accuse villa of wanting to kill him. That would be evidence of the fact that bill is not really in position to do him harm. I disagree with your characterization of what happened. The police actually told that if you let it be, he will, he will pay. They, they understood who Villa was, but that they finally does put things in motion I would assume. And they discouraged him but they didn't refuse to take a report. He will have then return, I mean, petitioner then return to Villa, and that's where he was again. So, and the record shows that this only thought that the bill I only thought that it was because petitioner reported that he was detained. And there's a distinction between government acquiescence about failure to pay and government acquiescence to actually torture, and as well. And, and petitioners mere speculation that Bella had a friendly relationship with police is wholly insufficient to establish Mr. Jolly, may, may I just return you to, to the subject that I asked about, and that is the meaning of five words, and I guess most especially one of the five words, although there's another that may be less than clear I think it is. What does government be. Is this, I mean is that referring to law enforcement and if so is it referring to law enforcement in the rates of Toronto's hometown or referring to law enforcement in a state or provincial government. I don't know what it means. Do you know what it means. I would say it merely reflects the level of specificity that petitioner provided in his testimony before the asylum officer and immigration judge. Well, if that is the case, and and information he provided was that limited in that obscure doesn't that really implicate the obligation of the IJ to have developed a better record. Shouldn't you have asked questions inquired. IJ in developing the record. And the reasonable fear process to the record before that was given before the asylum officer, and the immigration did that, and allowed petitioner to build off on the testimony that he gave to the asylum officer. That is all that was required of the immigration judge to do the immigration judge isn't isn't the advocate for a petitioner, and this is a judicial judicial officer, a judicial officer including an administrative officer isn't serving as an advocate. When she or he is developing a record, which makes the adjudicative process more complete and provides a record further for adequate review upon appeal. I see nothing in the nature of advocacy about those actions on the part of an adjudicator. We do understand that immigration judges are incredibly overwhelmed I mean there is a press of work on them that I cannot even begin to imagine and I say that having sat in a very, very busy trial court in Philadelphia with cases just kept coming it was where almost every decision they make is really a matter of life and death. They get it wrong, not talking about dollar damages here between core to well off corporations, you're talking about, possibly the, the prevalence of someone to their death or at least extreme torture. So despite their horrendous workload. They really do have an obligation to do more than this and I agree with what the chief just said, developing the record is not being an advocate, it's really doing your job it's putting us in a position where we can do our job and review it, but it's also putting the immigration judge in a position where he or she can make a reason and informed determination about whether or not a particular petitioner does suffer here it's it's torture if they're sent back, or even including the asylum claim which obviously we could claim was not to qualify for asylum which I don't think is here but the torture claim. We can't really review that given what's here government is willing to assist. I don't know what that means or what it's based on but I don't know to what extent you can take this message back, but it makes it impossible for us to do our job. When we see this kind of very very short dismissive statement, even understanding, they don't have a lot of time to sit down and write 1520 page opinions on every case we don't expect them to. But we do expect them to give us enough to let us know that the aliens claim was seriously considered, and that the reason the aliens claim is rejected is based upon sound reasoning and legal determination, and not just the next case mentality let's move this The best I can say is the use of the term government is probably an artful, but I'm guessing. I'm just guessing what the immigration judge was referring to was the government officials petitioner interacted with that said, if you guys, if you're honored sorry. That's okay. Guys. Believe me, others have said much worse. Yeah. And men. If those, if those five words are insufficient and then remand is the proper course. If, if Mr jolly, you are as you use the word guessing, I think you've made my point. Anything to add. All that's required is that the immigration judge review the record and grasp the movements claim and immigration judge did here. We can go into the due process claims if you want. But I would leave that up to you. Well, I'm going to accept Mr Holland's invitation to go back and read the entire transcript of the thing for the I usually do I admit in this case I didn't I just looked at the order of the judge did not like the transcript I will look at that so at least from the perspective of this guy. I appreciate the argument. Yeah, I do believe if you read the transcript it shows that the immigration judge was fair. After saying this was expedited removal and didn't have time for counsel. The judge asked petitioner if he had any. If he understood that that that time he didn't understand any kind of conflict between the notice for attorney, and what the immigration judge was telling him. He certainly could have brought it up there. But he was provided a full and fair opportunity to present his claims and have it reviewed by the immigration judge. All right. Thank you very much. I want to concur in my colleague judge McKee's observations and this was something I intended to do in this argument, and I forgot and I'm glad judge McKee mentioned it. We are not unaware of the terrible backlog situation that is often confronted the IJs and the BIA, nor of the difficulty of managing such a busy docket, and none of none of our questions should be taken as suggesting any insensitivity to that. I would want our own transcript if one were prepared to reflect that. Thank you, Mr. Hoffman. Thank you, Mr. Jolly Mr. Hoffman you have rebuttal. Thank you, Your Honor, I would just address Mr. Jolly's contention that all that is required of the immigration judge is that the review the record and grasp the claims. And I think that that is, is frankly wrong. Specifically, I would refer to the case that we cited in our brief. And in that case, it was clear that the duty to develop testimony that was discussed in our July, and to Ray applies to these so called expedited proceedings under section 208 31. And, and so, it's simply not the case, either that the immigration judge has no duty to develop the record, or that she was limited to the record of the asylum interview. The state that the immigration judge may at her discretion. Additional evidence. With that, I think, Your Honor, I, I have completed my argument now yield back the rest of my time. All right, thank you very much counsel, we will take the matter under advisement and decided in due course.